UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER S.,<br><br>Plaintiff,<br><br>v.<br><br>MICHELLE KING, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:23-cv-00864<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Christopher S.[1] brought this action for judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge ("ALJ") who addressed Mr. S.'s application determined he did not qualify as disabled.[3] Mr. S. argues the ALJ failed to properly evaluate medical opinion evidence from Mr. S.'s treating physician, Dr. Joseph Garcia.[4] Because the ALJ applied the correct legal standards in evaluating Dr. Garcia's opinions, and substantial evidence supports the ALJ's findings, the Commissioner's decision is affirmed.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. ("Tr.") 14–27, Doc. No. 8.)

[4] (*See* Opening Br. 2, 11–12, Doc. No. 9.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 6.)

1

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

---

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[15]

---

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

In the first four steps, the claimant has the burden of establishing disability.[16] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Mr. S. applied for disability insurance benefits under Title II of the Social Security Act,[18] alleging he became disabled on June 1, 2021.[19] After an administrative hearing,[20] the ALJ issued a decision denying benefits.[21]

At step two of the sequential evaluation, the ALJ found Mr. S. had the following severe impairments:

> degenerative disc disease, disc bulge/protrusion, and spondylosis of the lumbar spine with radiculopathy; degenerative disc disease of the cervical spine; labral tear and osteoarthritis of the right hip status post total hip arthroplasty; trochanteric bursitis; labral tear and bicep tendonitis of the left shoulder status post arthroscopic surgery; levator scapular syndrome of the right shoulder; osteoarthritis of the bilateral shoulders; arthritis in the hands; flexor tenosynovitis of the bilateral fingers; peripheral neuropathy; carpal tunnel syndrome; inflammatory polyarthritis; and obesity.[22]

At step three, the ALJ found Mr. S.'s impairments did not meet or medically equal an impairment listing.[23]

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 14.)

[20] (*See* Tr. 32–64.)

[21] (Tr. 14–27.)

[22] (Tr. 16–17.)

[23] (Tr. 19–20.)

The ALJ then found Mr. S. had the residual functional capacity to perform "a reduced range of light work" as follows:

> [T]he claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. He can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and he can occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. He can occasionally reach overhead and frequently reach in all other directions with the bilateral upper extremities. He can frequently handle, finger, feel, or operate hand controls with the bilateral upper extremities. He can tolerate no exposure to hazards, including unprotected heights and operating heavy machinery.[24]

At step four, based on this RFC finding and the testimony of a vocational expert, the ALJ found Mr. S. could perform past work as a vending machine attendant.[25] Alternatively, at step five, the ALJ found Mr. S. capable of other jobs including merchandise marker, "cashier II," and inserting machine operator.[26] Accordingly, the ALJ found Mr. S. not disabled and denied his claim.[27] This decision became final when the Appeals Council denied Mr. S.'s request for review.[28]

## ANALYSIS

Mr. S. argues the ALJ failed to properly evaluate medical opinion evidence from his treating physician, Dr. Joseph Garcia.[29] Specifically, Mr. S. contends the ALJ failed

---

[24] (Tr. 20.)

[25] (Tr. 25–26.)

[26] (Tr. 26–27.)

[27] (Tr. 27.)

[28] (Tr. 1–3.)

[29] (See Opening Br. 2, 11–12, Doc. No. 9.)

adequately explain why he rejected Dr. Garcia's opinion regarding Mr. S.'s upper extremity limitations.[30]

In determining a claimant's residual functional capacity, an ALJ must assess the persuasiveness of medical opinion evidence based on the following factors: (1) supportability (the objective medical evidence and supporting explanations presented by the medical source); (2) the consistency of the opinion with other medical and nonmedical sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[31] The most important factors are supportability and consistency—the ALJ is required to explain how he evaluated those two factors.[32] When a source provides multiple medical opinions, the ALJ may address them collectively, in a single analysis; he need not articulate how he considered individual opinions from the same source.[33]

Dr. Garcia first saw Mr. S. in January 2022.[34] A month later, Dr. Garcia completed a "statement of physical limitations" form opining, among other things, that Mr. S. could only lift between ten and twenty pounds and could use his hands and arms twenty-five percent of the workday.[35] He also opined Mr. S. was unable to work on a

---

[30] (*See id.* at 14–17.)

[31] 20 C.F.R. § 404.1520c(b), (c)(1)–(5).

[32] *Id.* § 404.1520c(b)(2).

[33] *Id.* § 404.1520c(b)(1).

[34] (*See* Tr. 607–09.)

[35] (Tr. 618–19.)

fulltime, sustained basis because of his medical conditions.[36] Dr. Garcia checked a box on the form indicating his opinions were based on "medical history," and added a handwritten note specifying they were based on "interaction w[ith] p[atient] about his limitations."[37] Dr. Garcia did not check any of the other boxes, such as "physical exams," "progress notes," "laboratory reports," or "imaging studies."[38]

The ALJ found Dr. Garcia's opinions unpersuasive.[39] The ALJ noted that although Mr. Garcia was a treating provider, he had only examined Mr. S. once (a month before the date of the opinion).[40] The ALJ also observed that Dr. Garcia based his opinions on Mr. S.'s medical history "and 'interactions with [the claimant] about his limitations' rather than physical examination findings, imaging studies, or other objective sources."[41] Based on this, the ALJ found Dr. Garcia's opinions regarding the extent of Mr. S.'s limitations "not well supported."[42] Finally, the ALJ found "the inability to productively complete an eight-hour workday [was] also inconsistent with the other opinion evidence."[43]

---

[36] (Tr. 619.)

[37] (*Id.*)

[38] (*Id.*)

[39] (Tr. 24.)

[40] (*Id.*)

[41] (*Id.* (alteration in original).) The ALJ's reference to Mr. S.'s "medication history" appears to be a typo. (*See* Tr. 619 (indicating Dr. Garcia based his opinion on Mr. S.'s medical history and patient interaction).)

[42] (Tr. 24.)

[43] (*Id.*)

This record shows the ALJ properly considered Dr. Garcia's medical opinions. As required, the ALJ articulated how he evaluated supportability and consistency (the most important factors in assessing the persuasiveness of medical opinion evidence). He also explained his consideration of Dr. Garcia's relationship to Mr. S.—noting that although Dr. Garcia was a treating provider, he had only seen Mr. S. once. In other words, the ALJ applied the correct legal standards and adequately articulated his reasons for finding Dr. Garcia's opinions unpersuasive.

Nevertheless, Mr. S. suggests the ALJ's evaluation was deficient for several reasons. First, he notes the ALJ provided no specific reasons for rejecting Dr. Garcia's opinion regarding Mr. S.'s upper extremity limitations.[44] But where Dr. Garcia provided multiple opinions, the ALJ was not required to address each opinion individually.[45] The ALJ properly provided a "source-level articulation" of Dr. Garcia's opinions taken together; no further specificity was required.[46]

Next, Mr. S. suggests the ALJ's supportability findings were inaccurate.[47] He asserts Dr. Garcia conducted a "lengthy exam" of Mr. S. (citing the January 2022 visit) before providing his opinions.[48] He also notes that although Dr. Garcia only saw Mr. S. once, Mr. S. was a longtime patient of Dr. Garcia's employer, and Dr. Garcia had

---

[44] (See Opening Br. 14, 16, Doc. No. 9.)

[45] See 20 C.F.R. § 404.1520c(b)(1).

[46] Id.

[47] (See Opening Br. 16, Doc. No. 9.)

[48] (Id. (citing Tr. 607–09).)

access to all Mr. S.'s prior treatment records.[49]  But taking his report at face value, Dr. Garcia did not base his opinions on a physical exam or objective medical evidence[50]—he did not check the boxes for "physical exams," "progress notes," "laboratory reports," or "imaging studies" when asked to indicate the basis for his opinions.[51]  Further, the record of the January 2022 visit (described as a visit "to establish care") contains no physical examination findings relating to upper extremity limitations (or other opined limitations).[52]  Thus, substantial evidence supports the ALJ's finding that Dr. Garcia's opinions were unsupported by physical examination findings, imaging studies, or other objective sources.

As to the consistency factor, Mr. S. argues the record contains "overwhelming support" for upper extremity limitations, consistent with Dr. Garcia's opinion.[53]  Mr. S. points to his history of shoulder surgeries, physical therapy for his shoulders, test results indicative of peripheral neuropathic pain and a tendon tear, a diagnosis of carpal tunnel syndrome, a diagnosis of inflammatory arthritis, and Mr. S.'s reports of bilateral shoulder pain and hand pain/numbness throughout the relevant time period.[54]  But the ALJ discussed or cited much of this evidence in his decision, demonstrating he considered

---

[49] (*See id.*)

[50] Agency regulations define "objective medical evidence" as "medical signs, laboratory findings, or both."  20 C.F.R. § 404.1513(a)(1).

[51] (Tr. 619.)

[52] (*See* Tr. 607–609.)  Under the heading "physical exam," the only note regarding "extremities" is "no edema appreciated."  (Tr. 608.)

[53] (Opening Br. 16, Doc. No. 9.)

[54] (*See id.* at 14–16 (citing Tr. 330–417, 435, 476, 564–75, 601, 613, 622, 625, 673).)

it.[55] He was not required to specifically discuss this evidence in assessing Dr. Garcia's opinion.[56]

Moreover, the ALJ accurately noted Dr. Garcia's opinions were inconsistent with other medical opinion evidence.[57] With respect to upper extremity limitations, a medical consultative examiner, Dr. William Qutub, opined Mr. S. could "frequently" (meaning one-third to two-thirds of the workday)[58] perform manipulative activities such as reaching, pushing, pulling, handling, grasping, fingering, and feeling.[59] The ALJ found Dr. Qutub's opinions persuasive, finding these manipulative limitations "supported by observations of some bony changes and is consistent with treatment notes that document the claimant's description of symptoms associated with inflammatory polyarthritis, arthritis in the hands, and peripheral neuropathy."[60] In other words, the ALJ found Dr. Qutub's opinion regarding manipulative limitations consistent with the medical evidence. Mr. S. does not specifically challenge this finding, nor explain why the medical evidence supports greater limitations than Dr. Qutub opined. On this

---

[55] (See Tr. 20–22 (citing Tr. 417, 433–34, 476, 564, 601, 613, 624, 627–28, 673).) The only exhibit cited by Mr. S. which the ALJ did not cite is Exhibit 2F (Tr. 330–416), the physical therapy records from July 2020 through July 2021. However, the ALJ noted that Mr. S. received physical therapy for his shoulder. (Tr. 21.)

[56] See Clifton v. Chater, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

[57] (See Tr. 24.)

[58] See SSR 83-10, 1983 SSR LEXIS 30, at *14 (Jan. 1, 1983).

[59] (Tr. 562.)

[60] (Tr. 23.)

record, the ALJ adequately explained his reasons for adopting Dr. Qutub's opinions regarding upper extremity limitations rather than Dr. Garcia's.

In sum, the ALJ applied the correct legal standards in evaluating Dr. Garcia's opinions. And his findings regarding supportability and consistency are supported by substantial evidence. Accordingly, Mr. S. has demonstrated no error in the ALJ's evaluation of Dr. Garcia's opinion.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 18th day of February, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge
